UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-2511 JGB (DTBx)** | Date | June 20, 2017 |
| Title | *Asmodus, Inc. & Hsueh Cheng Yin, et al. v. Junbiao Ou, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING Counterdefendants' Motion to Dismiss Defendants' Counterclaims (Dkt. No. 110); (2) DISMISSING the Counterclaims WITH LEAVE TO AMEND; and (3) VACATING the June 26, 2017 hearing (IN CHAMBERS)

    Before the Court is Counterdefendants' Motion to Dismiss Counterclaimants' six causes of action. ("Motion," Dkt. No. 110.) These matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers timely filed in support of, and in opposition to the Motion, the Court GRANTS Counterdefendants' Motion.

## I. BACKGROUND

**A. Procedural History**

    On June 15, 2016, Asmodus, Inc. ("Asmodus") and Hsueh Cheng Yin ("Yin"), filed a complaint against Junbiao Ou ("Ou"), Shenzen Sigelei Technology Co., ("Sigelei"), Dongguan Shenxi Hardware Electronics Technology Co., LTD., ("Shenxi"), Dongguan Wehe Electronic Technology Co., Ltd. ("Wehe"), LSM Technology, Ltd., ("Laisimo"), ACM Supplies, Inc. ("ACM"), Global Vaping LLC., ("GV"), and Does 1 through 50 in the United States District Court for the Northern District of California. (Dkt. No. 1.) ACM, Ou, and Sigelei filed a motion to dismiss for insufficient service of process and a motion to change venue to the United States District Court for the Central District of California on July 20, 2016. (Dkt. Nos. 17, 18.) On August 2, 2016, Plaintiffs filed an Amended Complaint, alleging twenty-three causes of action— including various statutory and common law trademark and copyright infringement claims, as well as claims for fraud, misrepresentation, breach of contract, and unfair business competition

under California law.  ("FAC," Dkt. No. 19.)  The FAC also adds Isaac Walker as a defendant.  (Id.)

On December 5, 2016, U.S. District Judge Edward J. Davila granted Defendants' motion to change venue and the motion for joinder, denied Plaintiffs' motion to strike, and terminated and vacated all pending matters.  (Dkt. No. 46.)  Judge Davila directed the parties to re-file such matters before the newly assigned district judge.  (Id.)  The matter was transferred to this Court on December 7, 2016.  (Dkt. Nos. 47, 48.)  On January 6, 2017, Defendants filed a renewed motion to dismiss under Rules 12(b)(5) and 12(b)(1).  (Dkt. No. 56.)  This Court denied Defendants' motion to dismiss on February 3, 2017.  (Dkt. No. 62.)

On March 15, 3017, Plaintiffs filed a Motion for Preliminary Injunction.  (Dkt. No. 73.)  The Court granted the Motion on May 12, 2017, concluding that Plaintiffs had demonstrated a high likelihood of success on the merits and that they would suffer irreparable harm in the absence of preliminary relief.  (Dkt. No. 115.)

Defendants filed their Answer on March 27, 2017, which contained forty affirmative defenses.  (Dkt. No. 80.)  Along with their Answer, Junbiao Ou and Sigelei, (collectively, "Counterclaimants") asserted six claims against Asmodus, Yin and Yin's wife, Eileen Ting Fan (collectively, "Counterdefendants").  ("Counterclaim," Dkt. No. 80.)  Counterclaimants bring the following causes of action: (1) fraud against Asmodus, Yin, and Yin's wife, Eileen Ting Fan ("Fan") (id. at 43); (2) breach of contract against Yin (id. at 44); (3) breach of fiduciary duty against Yin and Fan (id. at 45); (4) declaratory relief; (5) cancellation of Snow Wolfhead Design Mark Registration No. 5,104,116, 15 U.S.C. § 1051(a); and (6) declaratory judgment for cancellation of Snow Wolf Wolfhead Design Mark Registration Number 5,104,116 and damages, 15 U.S.C. §§ 1064, 1120.  ("Counterclaim," Id. at 46.)

### B. Factual Allegations and Claims

The following facts are drawn from Counterclaimants' counterclaim and taken as true for purposes of this Motion.  (Counterclaim at 38.)  Ou and Eddie Yin met at a convention for e-cigarette industry insiders in Las Vegas, Nevada in March of 2014.  (Counterclaim ¶ 13.)  Ou alleges that at the convention, he informed Yin that he was searching for a post-sale customer service center for Sigelei electronic cigarette products, including the Fat Snow Wolf.  (Id. at ¶ 14.)  In response, Yin allegedly proposed a joint venture where Yin would create a new company "that would provide after-market customer service for Sigelei products and would distribute Sigelei products in the United States."  (Id. at ¶ 15.)  Further, Yin allegedly stated that "Ou would be a 49% shareholder in this company and Yin would be a 51% shareholder."  (Id.)  Yin also allegedly represented that he "would manage the day to day operations of this new company, and Ou would provide discounted Sigelei products to the new company."  (Id.)  During this meeting, the Counterclaim alleges that Yin and Fan provided Ou with their bank statements showing a then current balance of $850,000.00 in their bank accounts "[t]o further convince Ou that Yin had the financial capability and know how to accomplish their joint venture."  (Id. at ¶ 17.)  In addition, Yin and Fan allegedly represented that they had extensive experience in marketing,

promoting, and selling products in the United States. (Id. at ¶ 18.) Ou allegedly decided to enter into this joint venture in April 2014, in "rel[iance] on" those representations. (Id. at ¶ 19.) The company that emerged was Asmodus, Inc. (Id.)

Ou alleges that at all relevant times thereafter, Yin and Fan assured him that he was a 49% shareholder and the Chief Financial Officer of Asmodus. (Id. at ¶¶ 20-22.) In fact, the Counterclaim alleges that: (a) Fan asked Ou for his passport to make copies for the purpose of incorporating the company, and (b) Yin and Fan sent Ou a picture of a statement of information for Asmodus and told Ou that the document represented his ownership in the company and his officer status. (Id. at ¶¶ 21, 22.) Counterclaimants allege that Ou instructed Sigelei to start supplying Asmodus with discounted Sigelei products in reliance on Counterdefendants representing that he owned half of Asmodus. (Id. at ¶ 23.) In addition, Yin and Fan allegedly told Asmodus employees to call Ou "Boss." (Id. at ¶ 24.)

Counterclaimants recount how "[a]fter experiencing initial success, Yin proposed that Asmodus sell products with [the] Asmodus brand logo, and requested help from Ou or Sigelei" to design and develop the Asmodus brand products and logo. (Id.at ¶ 25.) Ou alleges that given Yin's repeated representations of his 49% ownership in Asmodus, Ou agreed to assist Asmodus in developing its own products. (Id. at ¶ 26.) In January of 2016, Ou allegedly communicated to Yin that he needed to purchase 2% more of the Asmodus shares because he planned to take Sigelei public. (Id. at ¶¶ 29, 30.) Yin allegedly agreed to sell 2% of the outstanding shares to Ou and presented a share purchase agreement to execute such transfer. (Id. at ¶ 30.) On those bases, Ou maintains that his ownership was increased from 49% to 51%. (Id.) "In 2016," however, Yin and Fan allegedly informed Ou that he had no ownership in Asmodus. (Id. at ¶ 31.)

The Counterclaim further alleges that on or about April 22, 2016, Asmodus filed a trademark registration for the Design of the Snow Wolf Wolffhead mark with the United States Patent and Trademark Office ("USPTO"). (Id. at ¶ 32.) This filing was allegedly done without Sigelei's or Ou's knowledge. (Id.) Counterclaimants, however, maintain that they own the Snow Wolf Wolffhead design. In support, Counterclaimants allege that "[b]eginning in 2013" Sigelei independently created and developed the SnowWolf trademarks and the Wolffhead design. (Id. at ¶ 9.) Counterclaimants attach their application for a Chinese Trademark for the word "Snow Wolf" and the Wolffhead design filed in November 2013. (Id. at Exs. A, B.) Counterclaimants also applied for a U.S. trademark of the Snow Wolf marks on February 24, 2015. (Id. at ¶¶ 11, 12; Id. at Ex. D.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III. DISCUSSION

**A. Fraud**

Counterdefendants argue that the first counterclaim for fraud is insufficiently and vaguely pled, and therefore fails to satisfy the notice requirement of Rule 8 and the particularity requirement of Rule 9(b). (Mot. at 7.) In so doing, Counterdefendants point out that the allegations in the Counterclaim leave unclear what specific misrepresentation Ou alleges he relied on to his detriment. Counterdefendants assert that the Counterclaim leaves unclear what harm Counterclaimants allege. (Id. at 10-11.) Specifically, Counterdefendants argue that the Counterclaim fails to plausibly allege how Ou was harmed when he entered into the alleged discount supply agreement as a result of Counterdefendants' purported misrepresentations. (Id. at 7) ("It is not also not clear whether Ou had paid any separate consideration for the shares of Asmodus, Inc., whether agreeing to the discounted supply agreement was supposed to be the consideration for the shares, and what alleged misrepresentations Ou was relying on, to do what."). Counterdefendants further maintain that "[i]t is simply implausible," based on the allegations, "that the [Counterclaimants] suffered damages as a direct consequence of Yin allegedly misleading Ou that he owned stock in Asmodus, Inc" since "Ou and his companies

profited handsomely by their arrangement with Yin, stock or no stock." (Reply at 4); (Id. at 3) ("[B]oth Plaintiffs and Defendants acknowledge in their pleadings in this lawsuit that the business relationship was very profitable for both sides for the first two years following their informal arrangement."). Counterdefendants therefore assert that the fraud claim does not plausibly allege "reasonable reliance" and a causal relationship between the alleged misrepresentation and any harm to Counterclaimants.

Federal courts apply state law to state claims. Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004). "Under California law, a fraud action requires five elements: 1) misrepresentation; 2) knowledge of the falsity of the representation; 3) intent to induce reliance; 4) justifiable reliance; and 5) damages." Stewart v. Ragland, 934 F.2d 1033, 1043 (9th Cir. 1991). The heightened pleading standard of Rule 9(b) applies to claims of fraud, requiring that "a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. The Rule 9(b) particularity standard requires "an account of the time, place, and specific content of the false representation, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, 476 F.3d 756, 763 (9th Cir. 2007). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

Counterclaimants allege that Counterdefendants "made false representations to Ou when they repeatedly told him that he was 49% shareholder and chief financial officer of Asmodus, Inc." (Opp'n at 10.) Further, "Counter-[D]efendants knew . . . that these statements were false because they did not issue nor did they intend to issue any shares to Ou." (Id.) Lastly, Counterclaimants allege that "[b]ased on these representations and believing that he was part owner or Asmodus, Ou provided Asmodus with discounted Sigelei products, something he would not have done had he known that he was not a shareholder in Asmodus." (Id.) [1]

Counterclaimants' fraud claim is based on the same factual allegations as their breach of contract claim. Under California law, the economic loss rule requires a plaintiff who asserts a fraud claim based on the same factual allegations as a breach of contract claim to show that "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004) (quoting Erlich v. Menezes, 21 Cal.4th 543, 552 (1999)). "It has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud." Lazar v. Superior Ct., 12 Cal. 4th

---

[1] The Counterclaim, in paragraph 23, alleges that Ou "granted Yin and Asmodus a two million dollar line of credit for Sigelei products based on Ou's understanding that he owned 49% of Asmodus." (Counterclaim ¶ 23.) This allegation, however, omits when this line of credit was granted or its terms. The omission of these critical details requires the Court to speculate to infer any causal relationship between Counterdefendants' alleged misrepresentations and the alleged extension of credit.

631, 645 (1996). On that basis, courts have declined to apply the economic loss rule in cases where a false statement causes a party to enter a contract. See, e.g., Frye v. Wine Library, Inc., No. 06-5399 SC, 2006 WL 3500605, at *2 (N.D. Cal. Dec. 4, 2006) ("These allegations state a claim for fraudulent inducement under Section 1709, and thus are not defeated by the economic loss rule.") (internal citations omitted). Still, even where both contract and tort claims are available, "any overlap between damages recoverable in tort and damages recoverable in contract [are] limited by the rule against double recovery." Lazar, 12 Cal. 4th at 649; Audigier Brand Mgmt. v. Perez, No. CV 12-5687-CAS RZX, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012)("[M]any courts have applied the economic loss rule to bar recovery in tort where the damages [a] plaintiff seek[s] are the same economic losses arising from the alleged breach of contract.")(internal quotation marks omitted). Since the economic loss rule applies to fraud claims if they rely on the same allegations as breach of contract claims, Counterclaimants must allege either that the contract was fraudulently induced or they suffered some harm independent from the alleged contract damages as a result of Counterdefendants' intentional and tortious conduct.

The Court finds that Counterclaimants have not adequately alleged a viable fraudulent inducement theory. To state a claim for fraudulent inducement under California law, a plaintiff must allege that "the promisor kn[ew] what he [was] signing, but his consent [was] induced by fraud, mutual assent [was] present, and a contract [was] formed, which, by reason of fraud, is voidable." Duffens v. Valenti, 161 Cal. App. 4th 434, 449 (2008) (quoting Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 416 (1996)). Counterclaimants' only allegations are that Counterdefendants did not intend to comply with the purported agreement to transfer a 49% ownership interest to Ou, but falsely promised Ou that they would to induce Ou to provide discounted Sigelei products. (Counterclaim ¶¶ 36, 39.) These allegations are insufficient under Rule 9(b), which requires plaintiff to plead its allegations of fraud with specificity, even where plaintiff offers only circumstantial evidence of defendant's intent. See Jhaveri v. ADT Sec. Services, Inc., 2:11-CV-4426, 2012 WL 843315, *4 (C.D. Cal. Mar. 6, 2012) ("[F]raudulent intent cannot be proven...by simply pointing to the defendant's subsequent failure to perform as promised") (internal citations omitted); Hsu v. OZ Optims, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (finding that a "plaintiff must point to facts which show that defendant harbored an intention not to be bound by the terms of the contract at formation..."). The Court cannot infer fraudulent intent for purposes of a fraudulent inducement claim based on Yin and Fan's post-agreement representations to Ou that he was the owner of Asmodus. Post-agreement conduct does not allege fraudulent intent at the time of contract formation, which allegedly occurred either at the e-cigarette convention in March of 2014 or sometime in April 2014. As such, the allegations fall short of satisfying Rule 9(b) because apart from post-agreement representations, absent from the Counterclaim, are any underlying facts on which fraudulent intent may be plausibly inferred.

While it would not be clear from the Counterclaim, the references to post-agreement affirmative misrepresentations suggest that Counterclaimants' seek to allege a fraudulent concealment claim. (See, e.g., Counterclaim ¶ 21)( "Fan asked for Ou's passport to make copies... for the purpose of" preparing ownership documents and incorporating Asmodus); (Id.

at ¶ 22)("Fan and Yin sent Ou a picture of a statement of information for Asmodus filed with the California Secretary of State and dated October 17, 2014," telling Ou "that these documents proved his 49% ownership of Asmodus.")

In Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990–91 (2004), the California Supreme Court held that the economic loss rule did not bar the plaintiff from recovering for the defendant's fraudulent misrepresentations occurring after the contract of sale even though the plaintiff relied on the same allegations for its breach of contract claim. The Court concluded that because the plaintiff suffered harms from defendant's affirmative misrepresentations that were independent from the breach of contract damages, tort recovery was available. Id. Specifically, the Court found that "[b]y issuing false certificates of conformance, [the defendant] unquestionably made affirmative representations that Robinson justifiable relied on to its detriment." Id. It further found that "[b]ut for [the defendant's] affirmative misrepresentations. . . [the plaintiff] would not have accepted delivery and used the nonconforming clutches over the course of several years, nor would it have incurred the cost of investigating the cause of faulty clutches." Id. The harm caused by the post-agreement intentional misrepresentations were distinct from the economic loss stemming from the breach of contract: "[the defendant's] provision of faulty clutches exposed [the plaintiff] to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA." Id. The Court, therefore, held that "the fraud [was] a tort independent of the breach." Id. Still, the Court noted that its holding was limited to situations where a defendant's fraudulent conduct potentially "expose[s] a plaintiff to liability for personal damages independent of the plaintiff's economic loss." Id. at 993.

Here, Counterclaimants allege that Yin and Fan showed Ou false documents purporting to verify his ownership interest and officer status in Asmodus as well as instructed their agents to call Ou "boss." (Counterclaim ¶¶22, 24.) As in Robinson, Counterdefendants arguably breached a duty independent of their obligations under the purported contract by allegedly providing false information to a putative investor and business partner throughout their business relationship. Counterclaimants allege that but for Yin and Fan's post-agreement misrepresentations regarding Ou's ownership in Asmodus, Ou and Sigelei would not have agreed to assist Asmodus in developing its Asmodus brand products. This plausibly constitutes a separate harm than that alleged in support of the breach of contract claim.[2] Cf. Patriot Sci. Corp. v. Korodi, 504 F. Supp. 2d 952, 961 (S.D. Cal. 2007)("[T]he rendering of past services with the expectation of future payment constitutes sufficient consideration for a contract.")(citing Raichart v. Phillips, 120 Cal. App. 2d 645, 649 (1953)).

That said, the Court finds these allegations fail to plead a fraudulent concealment claim

---

[2] If the decision to develop and co-brand Asmodus products was fraudulently induced, Counterclaimants suffered distinct damages as a result of tortious conduct that is separate from the conduct alleged in support of the breach of contract claim. Still, this harm may not satisfy Robinson's standard because as alleged, it is still purely an economic loss. In any event, this theory of liability fails to satisfy the federal pleading standards under Rule 9(b) and Rule 12(b)(6).

because they are insufficiently particularized and lack specificity. For example, Counterclaimants allege a number of representations that purportedly induced Ou to provide Asmodus with Sigelei products. The Counterclaim first alleges that Ou agreed to enter the joint venture in reliance on Yin and Fan's bank account statement and their representations regarding Yin's experience successfully selling products in the U.S. Market. (Counterclaim at ¶¶ 17, 18.) The Counterclaim also alleges that Ou and Sigelei agreed to provide Yin with Sigelei products if Asmodus would serve as Sigelei's post-sale customer service center. (Id. at ¶ 15.) On the other hand, the Counterclaim repeatedly alleges that Ou only agreed to enter into this purported joint venture because he believed he was a 49% shareholder of Asmodus. Since the allegations do not specify the date of each alleged agreement, the date of each particular misrepresentation, and which individual Counterdefendant is alleged to have made each misrepresentation, the Court cannot infer a causal relationship between Counterdefendants' allegedly tortious conduct and the damages Counterclaimants' allege they suffered. As such, the allegations fall short of plausibly stating a fraudulent concealment claim.

Accordingly, the Court GRANTS Counterdefendants' Motion to Dismiss Counterclaimants' first cause of action, and DISMISSES the fraud counterclaim WITH LEAVE TO AMEND.

**B. Breach of Contract**

Counterdefendants argue that the contract claim must fail because it is time-barred under the three-year statute of limitations. (Mot. at 12.) In so doing, Counterdefendants point out that the Counterclaim alleges that Counterdefendants "had no intention to perform by giving Counterclaimants his 49% shareholder status in Asmodus, Inc." (Id.) Counterdefendants therefore maintain that the claim is time barred because as alleged, the breach must have occurred at the outset of Ou and Yin's purported agreement, in April 2014. (Id. at 12-13.) In addition, Counterdefendants assert that it is not clear from the pleadings whether the contract was "express, implied, or otherwise," "was in writing or oral" or "when the contract was breached." (Id. at 12.)

Counterclaimants seek to rely on the discovery rule to toll the statute of limitations. Counterclaimants argue that "although [the] contract was entered into in April 2014, Ou did not discover the breach until 2016." (Opp'n at 11; Counterclaim ¶ 31.) On that basis, Counterclaimants maintain that the statute of limitations did not begin to run until April 2016, when Counterdefendants repudiated the contract by telling Ou that he did not own any shares in Asmodus." (Opp'n at 11; Counterclaim ¶ 31.) [3] Counterclaimants further assert that Counterdefendants' fraudulent concealment warrants equitably tolling the breach of contract claim. (Opp'n at 12.) In particular, Counterclaimants maintain that by repeatedly representing

---

[3] In his Declaration in opposition to Plaintiffs' motion for preliminary injunction, however, Ou declares that the business relationship was severed in March of 2016 when Yin informed him that he had been "removed" as a director and officer of Asmodus unilaterally because he had never made any type of cash contribution. (Dkt. No. 81-1 ¶ 46.)

that they had honored the agreement that Ou was in fact a shareholder, Yin and Fan prevented Ou from becoming aware of Counterdefendants' purported breach. (Id.)

In reply, Counterdefendants argue that Counterclaimants cannot plausibly allege fraudulent concealment under Rule 9(b) to toll the statute of limitations: "Ou cannot plausibly argue that [the parties] reached a certain, specific agreement on the one hand, that called for Yin to issue him shares of Asmodus, while maintaining on the other, that under the arrangement, he, Ou, himself would be in a role as Chief Financial Officer ("CFO") of Asmodus, Inc., which duties actually require the knowledge, accounting and reporting of share ownership." (Reply at 5.) In effect, Counterdefendants maintain that it is simply implausible that the CFO of Asmodus did not know or could not reasonably discover, that he did not own 49% of the outstanding shares of the company. (Id.)

### 1. Timeliness

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (citations omitted). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." WA Southwest2, LLC v. First American Title Insurance Company, 240 Cal. App. 4th 148, 156 (2015). To invoke the discovery rule, a plaintiff must plead: "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Id. at 157 (emphasis in original); Nguyen v. W. Digital Corp., 229 Cal. App. 4th 1522, 1553 (2014). Given the chasms in Counterclaimants' allegations, obfuscating a coherent theory of relief, the Court cannot conclude that the tolling of the statute of limitations is "apparent on the face of the complaint." Thus, the Court declines to dismiss on this basis.

### 2. Sufficiency of Allegations

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811 (2011). A contract may be either express or implied. Cal. Civ. Code § 1619. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am., Inc., 161 Cal. App. 45h 172, 182 (2008).

Counterclaimants allege that Ou and Yin entered into a contract in April 2014 where Ou would be a 49% shareholder and Yin would be a 51% shareholder in Asmodus, Inc. (Counterclaim ¶¶ 43, 44.) According to the terms of the alleged contract, "Yin agreed to manage the day to day operations of Asmodus and Ou agreed to provide Asmodus with discounted Segelei [sic] products," as well as "a two million dollar line of credit towards the purchase of Segelei [sic] products." (Id. at ¶ 45.) Counterclaimants allege they performed all of their obligations under the terms of the alleged agreement. (Id. at ¶ 47.) By allegedly "failing to provide Ou with 49%

interest in Asmodus, Inc. and failing to account for profits to Ou in Asmodus, Inc.," Counterdefendants breached the alleged agreement and as a result, Counterclaimants allege they suffered damages.  (Id. at ¶ 47, 48.)  That said, the Counterclaim could be read to allege the existence of multiple contracts.  Ou alleges the initial agreement was entered into at the e-cigarette convention in March 2014.  But he also refers to an agreement entered into in April of 2014.  Adding to the confusion is the Counterclaim's inclusion of allegations surrounding the Asmodus branded products.  Ou alleges that at some point during their relationship, Yin asked him and Sigelei to help design and manufacture Asmodus brand products.  By alleging that but for his 49% ownership of Asmodus, he would not have entered into this arrangement, Ou seems to suggest that his assistance in developing Asmodus's products served as consideration for his ownership interest.  Meanwhile, there are multiple forms of consideration alleged in the Counterclaim without a clear nexus to an identifiable contract.  What's more, Ou attaches a copy of board minutes for Asmodus that he claims Yin sent to him on February 29, 2016.  (Dkt. No. 112-1 ¶ 6; Id. at Ex. 2.)  The board minutes state that the "Directors desire to offer shares for consideration."  (Id. at Ex. 2.)[4]  Directly underneath are the shares of Yin and Ou displayed in the following way:

| Name | Shares | Consideration |
|---|---|---|
| Hsueh-Cheng Yin | 51,000 | |
| Junbiao Ou | 49,000 | |

The text message conversation with the attached photo of the Asmodus board minutes could plausibly allege the existence of an express contract.  While a contract may be either express or implied, there cannot "be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."  Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613 (1975).  The allegations must therefore specify which type of contract Counterclaimants are alleging was breached for the Court to determine whether Counterclaimants' contract claim is sufficiently alleged.

Furthermore, based on Ou's Declaration, it is plausible that Asmodus's board did not agree to issue Ou shares until early 2016.  If this were the case, any purported oral representations prior to this date could not form the basis of an enforceable contract:

> Preliminary negotiations or [agreements] for future negotiations are not the functional equivalent of a valid, subsisting agreement. 'A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know

---

[4] In a motion to dismiss, a court may take judicial notice of documents attached to or referenced in the complaint without converting the motion into one for summary judgment where the authenticity of the documents are not in dispute.  Fed. R. Evid. 201; Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., 868 F. Supp. 2d 983 (E.D. Cal. 2012)

>that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.' (Rest. 2d Contracts, § 26, p. 75).

Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 213–14 (2006).  Relatedly, the board minutes indicate that the shares would only be issued "for consideration."  But the consideration Ou alleges he gave in exchange for the 49% stake in Asmodus was conferred prior to February 2016.  The Court cannot therefore conclude that the parties, at any point, had a "meeting of the minds" as to the terms of their exchange of promises.  As a result, the Court cannot plausibly infer that the alleged agreements to issue Ou shares pre-dating February 2016 were anything more than "agreements to agree."  See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").  Under California law, indefinite "agreements to agree" cannot impose legally binding obligations on either party.  See, e.g., Cable & Computer Technology v. Lockheed Sanders, Inc., 214 F.3d 1030, 1035 (9th Cir. 2000).

Once the conclusory allegations are stricken, the factual allegations are just as consistent with the existence of an agreement whereby Asmodus provided post-sale customer services in exchange for discounted Sigelei products and Yin contributed his experience and talent in promoting and selling e-cigarette products and in exchange, enjoyed the exclusive rights to distribute Sigelei products.  The allegations could also be read to infer the existence of three separate contracts.  The perplexity of Counterclaimants' breach of contract claims is compounded by the Counterclaim's varying averments with respect to damages.  It cannot be determined from the allegations whether Counterclaimants seek to recover the value of the discounted product, restitution for Asmodus's ill-gotten gains, repayment of the $2 million-dollar line of credit or half of Asmodus.  See Bustamante, 45 Cal. Rptr. 3d at 699.  In short, the allegations are insufficient for the Court to either discern with sufficient clarity the scope of the parties' respective duties or plausibly infer a causal relationship between any cognizable harm and Counterdefendants' purported breach.  See Juan H. v. Allen, 408 F.3d 1262, 1277 (9th Cir. 2005) ("A 'reasonable' inference is one that is supported by a chain of logic, rather than, as in this case, mere speculation dressed up in the guise of evidence.").

The Court need not delve into the allegations further to conclude that the breach of contract claim is insufficiently pled.  The Counterclaim fails to adequately allege the essential terms of the purported contract or contracts, including, its duration, the scope of the parties' relative duties, when performance was due, and what consideration was bargained for.  The Court cannot therefore assess whether the claim of contractual breach is plausible.  Counterclaimants allege a vague promise, and without more specificity, the Court cannot determine the scope of the duty or an assessment of damages.  Accordingly, the Court GRANTS Counterdefendants' Motion to Dismiss Counterclaimants' breach of contract claims, and DISMISSES the Second Cause of Action WITH LEAVE TO AMEND.

**C. Breach of Fiduciary Duty**

Counterdefendants argue that the breach of fiduciary claim must fail because Counterclaimants "fail[] to establish the prima facie element of share ownership in Asmodus by Ou." (Mot. at 13.) In Counterdefendants' view, since the breach of contract allegations rely on shares never being issued to Ou, Counterclaimants cannot adequately or plausibly plead both the breach of contract claim and the breach of fiduciary duty claim. (Mot. at 14.)

Counterclaimants, on the other hand, argue that their breach of contract and breach of fiduciary duty claims are pled in the alternative, which is entirely proper at the pleading stage. (Opp'n at 13.)("[I]f the Court determines that Ou was in fact a shareholder of Asmodus, Inc., then Counterclaimants would have a valid cause of action against Counterdefendants for breach of fiduciary duty.") Counterdefendants respond that while an alternative theory of the facts may be fine under Rule 12(b)(6), Counterclaimants plead alternate facts. (Reply at 6.)

To state a claim for breach of fiduciary duty, a complaint must allege the existence of a fiduciary duty, its breach, and damages resulting therefrom. City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483 (1998) ("The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach"); Pierce v. Lyman, 1 Cal. App. 4th 1093 (1991) ("In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action").

Since the Counterclaim is devoid of any allegations satisfying the prerequisites for a shareholder to bring a derivative action, see Cal. Corp. Code § 800, the Court assumes that Counterclaimants plead an individual action for harm done to Ou personally. Jara v. Suprema Meats, Inc., 121 Cal. App. 4th 1238 (2004). While Counterclaimants' breach of contract and breach of fiduciary duty claims could be complementary if Counterclaimants' breach of fiduciary duty claim were based on the existence of a partnership, Tri-Growth Ctr. City, Ltd. V. Silldorf, Burdman, Dunigan & Eisenberg, 216 Cal. App. 3d 1139, 1150 (1989) ("[W]hen a partnership is created, the parties acquire rights and duties based on a fiduciary relationship"), the Opposition makes clear that Ou's standing and his rights derive from his alleged status as minority shareholder of Asmodus rather than the fiduciary relationship ensuing from the parties' joint venture. Since Ou must show ownership at the time the fiduciary duties were allegedly breached, the Counterclaim fails to allege his standing to sue as a minority shareholder. Gaillard v. Natomas Co., 173 Cal. App. 3d 410, 416 (1985). Accordingly, the Court concludes that Counterclaimants cannot allege a viable breach of fiduciary claim if the claim is based on Ou's status as a minority shareholder.

That said, the Third Counterclaim also contains language ordinarily employed to allege a breach of loyalty claim. It alleges that Ou placed a high level of trust, faith and confidence in Yin and Fan, and attending this relationship of trust was a "legal and fiduciary duty to Ou to act with undivided loyalty and confidentiality." (Counterclaim ¶ 50.) "The manager of an LLC has a

fiduciary duty and owes to the members of the LLC the same duties of loyalty and good faith as a partner owes to the partnership and its partners." Feresi v. The Livery, LLC, 232 Cal. App. 4th 419, 425 (2014). Here, the duty would not arise from contract, but from the parties' relationship. See Manok v. Fishman, 31 Cal. App. 3d 208, 213 (1973) ("[T]o the extent that their respective rights and duties are not spelled out in an express agreement, the law imposes obligations arising out of the nature of their fiduciary relationship.").

As to breach, Counterclaimants allege that "Yin and Fan, individually and jointly, breached their fiduciary duties by doing, or failing to do, the things alleged herein, including but not limited to, engaging in self-dealing; refusing to provide any accountings to Ou; attempting to eliminate Ou shareholders interest in Asmodus or to harm Ou's financial interest while favoring Yin and Fan's interest in Asmodus." (Id. at ¶ 52.) These are precisely the type of conclusory allegations prohibited by Iqbal and Twombly. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Each type of breach of fiduciary duty claim—duty of loyalty, duty of care, duties to partners or the duties of majority shareholders to minority shareholders—requires separate elements. As such, the Counterclaim's failure to specify which conduct allegedly breached each type of fiduciary obligation alleged is fatal to Counterclaimants' breach of fiduciary duty claim.

While Ou could allege a breach of loyalty claim against Yin and Fan based on the parties' relationship as joint venturers, the breach of loyalty claims are either conclusory or lump Yin and Fan together. These allegations fail to satisfy the requirements of Rule 8. Since as alleged, the third counterclaim is unclear as to the theory of recovery Counterclaimants advance, the breach of fiduciary duty claim necessarily fails to satisfy Rule 12(b)(6). The Court therefore GRANTS Counterdefendants' Motion to Dismiss the Third Cause of Action, and DISMISSES the counterclaim WITH LEAVE TO AMEND.

**D. Cancellation of Snow Wolfhead Design Mark**

Counterdefendants argue that the two counterclaims seeking cancellation of the Snow Wolf Wolfhead design marks must be dismissed because missing from the Counterclaim are any references to commercial use or sufficiently particularized allegations of fraudulent registration, including that Counterdefendants "knew or should have known" of Counterclaimants' superior rights to the Snow Wolf Wolfhead design marks. (Mot. at 15-17.)

While formal cancellations of trademark registrations are executed before the USPTO, courts may "direct the PTO to cancel a mark under 15 U.S.C. § 1119." Van Well Nursery, Inc. v. Mony Life Ins. Co., 421 F. Supp. 2d 1321, 1332 (E.D. Wash. 2006). Cancellation of a trademark registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." Star-Kist Foods, Inc. v. P. J. Rhodes & Co., 735 F.2d 346, 348 (9th Cir. 1984) (quoting Int'l Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 1091 (Fed. Cir. 1984)). To establish standing, "the cancellation petitioner must plead and prove facts showing a 'real interest' in the proceedings." Hokto Kinoko Co. v. Concord Farms, Inc., 810 F. Supp. 2d 1013, 1034 (C.D. Cal. 2011), aff'd, 738 F.3d

1085 (9th Cir. 2013).  Ou and Sigelei have a "real interest" in the proceedings since they are asserting they are the designers and owners of the Snow Wolf Wolffhead marks.

The Court now turns to whether Counterclaimants have stated a valid ground for cancellation of the trademark.  Counterclaimants allege that**:** "Sigelei designed and used the mark in commerce in 2013" (Opp'n at 14; Counterclaim ¶¶10, 14), Counterdefendant "knew that Sigelei had used the mark first in [c]ommerce" and "knew that it did not own the mark," (Counterclaim ¶ ¶14, 65), "knowingly asserted falsely that it was the owner of the mark" (Id. at ¶ 64) and "[r]elying on these falsehoods and misrepresentations, the USPTO issued a mark in the Snowwolf head to Asmodus," which "has caused harm to Counterclaimant."  (Id. at ¶¶ 64-67.)  Rule 9(b) requires specificity in pleading fraud.  See Fed. R. Civ. P. 9(b).  Rule 9(b)'s pleading requirements apply to claims of fraud in the procurement of USPTO registration.  Burlington Industries, Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988).

A party seeking cancellation of a mark for fraud on the USPTO application or registration must allege all the following elements: "(1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false ('scienter'); (3) an intention to induce the listener to act or refrain from acting in reliance on the misrepresentation; (4) reliance on the misrepresentation ('reasonable reliance'); and (5) damage proximately resulting from such reliance."  eCash Techs., Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000), aff'd, 35 Fed. Appx. 498 (9th Cir. 2002); see also Spin Master, Ltd. v. Zobmondo Entm't, LLC, 778 F. Supp. 2d 1052, 1061 (C.D. Cal. 2011).  However, a party alleged to have committed the fraud may rely on good faith as a defense: "Fraud . . . will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true. . ."  Maids to Order of Ohio, Inc v. Maid-to-Order, Inc., 78 U.S.P.Q.2d 1899, 1905 (T.T.A.B. 2006).  Indeed, the alleged fraudulent misstatements must be a "deliberate attempt to mislead the [USPTO]."  Orient Exp. Trading Co., Ltd. v. Federated Dep't Stores, Inc., 842 F.2d 650, 653 (2d Cir. 1988).

A party seeking to cancel a trademark based on fraud on the USPTO bears the burden to prove the fraud by "clear and convincing evidence."  Id.  The party seeking to cancel the trademark bears a heavy burden of proof:

> [T]he statement of an applicant that no other person to the best of his knowledge has the right to use the mark does not require the applicant to disclose those persons whom he may have heard are using the mark if he feels that the rights of such others are not superior to his.  Thus, an applicant who has at least 'color of title' to use the mark is not guilty of fraud in making the foregoing application recitals.

 Yocum v. Covington, 216 U.S.P.Q. 210, 216-17 (T.T.A.B. 1982).

Counterclaimants allege that Sigelei used the Snow Wolf Wolffhead marks in commerce first, and that Yin knew of this fact.  Generally, trademark ownership rights attach to the first use of the mark.  However, to enforce such ownership rights in this country's courts, that use must be in the United States.  Commercial use of a mark overseas cannot form the basis for a holding of

priority of trademark use in the United States. Johnson & Johnson v. Diaz, 339 F. Supp. 60, 63 (C.D. Cal. 1971). Counterclaimants' fraud allegations are based on their prior use in China. Counterclaimants do not adequately allege their priority of use in the United States. Counterclaimants cannot therefore allege that Yin deliberately intended to mislead the USPTO by claiming superior ownership of the Snowwolf Marks. At the same time, Counterclaimants fail to allege any of the factors to establish priority of ownership in the absence of registration under Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 516 F.2d 846, 850 (8th Cir. 1975). Accordingly, Counterclaimants fail to plausibly rebut Counterdefendants' priority of use, which is presumed by virtue of Asmodus's trademark registration for the Snowwolf Marks.

When disputes arise between a manufacturer and distributor, courts will look first to any agreement between the parties regarding trademark rights. Sengoku, 96 F.3d at 1220. In the absence of an agreement between the parties, the manufacturer is presumed to own the trademark. Id. This presumption applies with equal force to cases involving foreign manufacturers. Id. Still, the presumption in favor of the manufacturer is rebuttable. In fact, there is ample precedent holding that an exclusive distributor may acquire trademark rights superior to those of the manufacturer. See Menendez v. Holt, 128 U.S. 514 (1888); see also Blue Bell, Inc. v. Farah Manufacturing Co., Inc., 508 F.2d 1260, 1265 (5th Cir. 1975) ("The exclusive rights to a trademark belongs to one who first uses it in connection with specified goods."). When there are competing claims of ownership between a distributor and a manufacturer, courts look to various factors when determining which party has the superior right of ownership, including: (1) which party invented and first affixed the mark onto the product; (2) which party's name appeared with the trademark; (3) which party maintained the quality and uniformity of the product; and (4) with which party the public identified the product and to whom purchasers made complaints. Sengoku, 96 F.3d at 1220. Courts also consider which party possesses the goodwill associated with the product, or which party the public believes stands by the product. Id.

The Counterclaim fails to allege any of these elements to infer Counterclaimants' priority of ownership under Wrist-Rocket Mfg. Co., 516 F.2d at 850. On that basis, the Court cannot plausibly infer that Counterclaimants' sufficiently allege "clearly established" rights in themselves which render Yin's registration fraudulent. eCash Techs., Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1081 (C.D. Cal. 2000). Accordingly, this claim fails. As such, the Court GRANTS Counterdefendants' motion to dismiss and DISMISSES the Fifth counterclaim WITH LEAVE TO AMEND.

**E. Declaratory Relief**

Since the Court finds the allegations insufficient to allege any of Counterclaimants' five foregoing causes of action, the Fourth and Sixth Causes of Action for declaratory relief necessarily fail. As such, the Court GRANTS Counterdefendants' Motion to Dismiss, and Dismisses the Counterclaims WITH LEAVE TO AMEND.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Counterdefendants' Motion to Dismiss and DISMISSES the Counterclaim WITH LEAVE TO AMEND. Counterclaimants must file an amended counterclaim, if any, no later than June 30, 2017.

**IT IS SO ORDERED.**